MARK S. ZACHARY
State Bar No. 22237450
**McMahon Surovik Suttle**
A Professional Corporation
P. O. Box 3679
Abilene, Texas 79604
325-676-9183/FAX 676-8836
Attorneys for Abilene Teachers Federal Credit Union

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 08-10223-rlj13** |
| | § | |
| | § | **CHAPTER 13** |
| | § | **IF A TIMELY ANSWER IS FILED,** |
| **MAGDALENO HERNANDEZ** | § | **A FINAL HEARING ON THIS** |
| **AND** | § | **MOTION WILL BE HELD AT** |
| **SYLVIA CONCHA HERNANDEZ** | § | **11:00 O'CLOCK A. M, ON** |
| | § | **MAY 1, 2013** |
| **DEBTORS** | § | |
| | § | |
| | § | **THE HONORABLE** |
| | § | **ROBERT L. JONES** |

### *FIRST AMENDED*
### *MOTION FOR RELIEF FROM AUTOMATIC STAY*
### *AND CO-DEBTOR STAY*

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT  ROOM 306, 1205 TEXAS AVENUE, LUBBOCK, TEXAS 79401 BEFORE CLOSE OF BUSINESS ON MAY 1, 2013, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Abilene Teachers Federal Credit Union, Movant, and files this its Motion for Relief from Automatic Stay and Co-Debtor Stay and in support thereof would show the following:

1.

Magdaleno and Sylvia Hernandez filed this proceeding under Chapter 13 of the U.S. Bankruptcy Code on or about June 26, 2008. Co-Debtor Josie Hernandez is a co-borrower under the Loan Documents (hereafter defined) with Movant.

2.

This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. § 362 and Bankruptcy Rules 4001 and 9014.

3.

Movant is a secured creditor in the above-captioned proceeding. Specifically, Sylvia Hernandez and a Co-Debtor, Josie Hernandez, entered into an Open-End Credit Agreement with Movant. A true and correct copy of such Open-End Credit Agreement (with redactions) is attached hereto as Exhibit "1" and incorporated herein by reference. Thereafter, Sylvia Hernandez and a Co-Debtor, Josie Hernandez, obtained a disbursement under the terms of the Open-End Credit Agreement and pledged the Motor Vehicle described in paragraph 4 below to secure their obligations under the Open-End Credit Agreement. A true and correct copy of the Disbursement Voucher and Personal Property Security Agreement (with redactions) executed by the Debtor Sylvia Hernandez and Co-Debtor Josie Hernandez in this regard is attached hereto as Exhibit "2" and incorporated herein by reference. The Open End Credit Agreement and Disbursement Voucher and Security Agreement are collectively referred to herein as the "Loan Documents".

4.

The indebtedness represented in paragraph 3 above is secured by a valid and duly perfected lien in favor of Movant on the following described personal property (the "Motor Vehicle")

2006 Chevrolet Trailblazer, VIN 1GNET16S266105938

A true and correct copy of the Texas Certificate of Title (with redactions) concerning the Motor Vehicle naming Abilene Teachers Federal Credit Union as lienholder of the Motor Vehicle is attached hereto as Exhibit "3" and incorporated herein by reference.

5.

According to Debtor's Chapter 13 Plan that has been approved by this Court, the loan that is referenced in Paragraph 3 above is to be made on a "direct" basis to Movant.

6.

Debtor Sylvia Hernandez and Co-Debtor Josie Hernandez are unable to make their monthly payments to Movant in accordance with the terms of the Loan Documents. These defaults under the Note have resulted in loss and harm to Movant. Specifically, the loan requires payments of $364.00 per month and the loan is currently past due in the total sum of $899.00, which includes the following past due payments:

> December 25, 2012 ($161)
> January 25, 2013 ($364)
> February 25, 2013 ($364).

7.

By reason of the foregoing, cause exists for vacating the stay so Movant may proceed to enforce its security interest in the Motor Vehicle in accordance with the Loan Documents, as well as to enforce its rights under the Loan Documents against Co-Debtor Josie Hernandez.

8.

Debtor has failed to provide adequate protection to Movant which constitutes cause to vacate the automatic stay of 11 U.S.C. § 362(a) and the Co-Debtor stay of 11 U.S.C. §1301.

9.

In accordance with the terms of the Loan Documents, Debtor is liable for costs and attorney's fees incurred by Movant in enforcing its rights as a result of breaches under the Loan Documents. Movant would allege that it is entitled to reasonable attorney's fees and costs incurred with regard to the filing of this Motion for Relief from Automatic Stay.

11.

Alternatively, Movant requests the Court enter an Order providing Movant adequate protection.

12.

This First Amended Motion for Relief from Automatic Stay is an amendment to the Motion for Relief from Automatic Stay filed by Movant in the above cause on March 22, 2013

WHEREFORE, Movant prays that pursuant to §362(d) and §1301 of the Bankruptcy Code:

(1)     The Court enter an Order after notice and hearing terminating the automatic stay (11 U.S.C. §362)  as to Movant and the Co-Debtor Stay (11 U.S.C. §1301) as to Josie Hernandez relating to the Loan Documents and the Motor Vehicle; or

(2)     Alternatively, Movant be afforded adequate protection including, but not limited to, having all post-petition payments brought current and being reimbursed for its reasonable attorney's fees and expenses; and

(3)     Movant be granted such other and further relief to which it may show itself justly entitled, either at law or in equity.

Respectfully Submitted,

**McMahon Surovik Suttle**
A Professional Corporation
Post Office Box 3679
Abilene, Texas 79604
325-676-9183/FAX 676-8836

BY:  /s/Mark S. Zachary
MARK S. ZACHARY
State Bar No. 22237450
Attorneys for Movant,
*Abilene Teachers Federal Credit Union*

## CERTIFICATE OF CONFERENCE

On March 22, 2013 the undersigned communicated with Pam Richey regarding the relief requested in this Motion. The undersigned made a good faith effort to negotiate a settlement of the dispute with Debtor's Counsel, but was unsuccessful. Pam indicated that she is opposed to the relief sought in the Motion.

Signed this 26th day of March, 2013.

/s/Mark S. Zachary
Mark S. Zachary

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 26th day of March, 2013, I have served a true and correct copy of the above and foregoing upon all parties as shown below:

ATTORNEY FOR DEBTOR:
*Via First Class Mail*
Larry Reed Lewis
Monte J. White & Associates, P.C.
1106 Brook
Wichita Falls, Texas 76301

CHAPTER 13 TRUSTEE:
*Via First Class Mail*
Mr. Walter O'Cheskey
6308 Iola Avenue
Lubbock, Texas 79424

*Via First Class Mail*
Pam Richey
Monte J. White & Associates, P.C.
402 Cypress, Suite 310
Abilene, Texas 70601

U.S. TRUSTEE:
*Via First Class Mail*
U.S. Trustee's Office
1100 Commerce Street, Room 976
Dallas, Texas 75242

DEBTORS:
*Via Certified Mail, RRR 7011 2000 0000 5993 4607*
Magdaleno Hernandez
1261 West Eden
Munday, Texas 76371

CO-DEBTOR:
*Via Certified Mail, RRR 7011 2000 0000 5993 4621*
Jodie Hernandez
7117 County Road 4235
Munday, Texas 76371

*Via Certified Mail, RRR 7011 2000 0000 5993 4614*
Sylvia Concha Hernandez
1261 West Eden
Munday, Texas 76371

PARTIES REQUESTING NOTICE:
*Via First Class Mail*
Thomas W. Choate
P.O. Box 206
Abilene, Texas

*Via First Class Mail*
B-Line, LLC
Attn: Steven Kane
P.O. Box 91121, Dept. 550
Seattle, Washington 98111-9221

*Via First Class Mail*
Michael Reed
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, Texas 78680

/s/Mark S. Zachary

page 337   [00070000JZ27H2GQ]

# EXHIBIT "1"

**OmniCredit**
*OPEN-END CREDIT PLAN AGREEMENT
AND TRUTH IN LENDING DISCLOSURE*

ABILENE TEACHERS FEDERAL CREDIT UNION
P.O. BOX 5706, ABILENE, TEXAS 79608
MAIN OFFICE
2801 NORTH 6TH ST., (325) 677-2274, FAX: (325) 676-0515
BRANCH OFFICE:
2555 BUFFALO GAP RD., (325) 692-7265, FAX: (325) 695-6847

## COMPLETE AND SIGN WHERE INDICATED BELOW, THEN MAIL OR BRING THIS PAGE TO YOUR CREDIT UNION.

| BORROWER(S) NAME, ADDRESS, CITY, STATE & ZIP CODE | |
|---|---|
| SYLVIA C HERNANDEZ        JOSIE HERNANDEZ<br>1261 W EDEN ST<br><br>MUNDAY, TX 76371-2021 | MEMBER NO.<br><br>LOAN NO.<br><br>EFFECTIVE DATE<br>3-24-2008 |

This is a comprehensive Open-End Credit Plan Agreement: It consists of the credit services listed below under the heading "Subaccounts". Please read the Agreement below and the Open-End Credit Plan Agreement Supplement for the services you have requested and been approved for, then sign the credit plan agreement where indicated below.

## OPEN-END CREDIT PLAN AGREEMENT AND TRUTH IN LENDING DISCLOSURE

In this Open-End Credit Plan Agreement (the "Plan Agreement"), the words "you" and "your" mean each person signing below, each person who signs any Credit Application or other Application for services in connection with this Plan, and each person who receives money, goods or services under the terms of any subaccount offered through this Plan. If more than one person is indebted or otherwise obligated under this Plan Agreement, each of you is jointly and severally liable for payment of all obligations hereunder. The words "we", "us" and "our" mean the Credit Union named above.

SUBACCOUNTS - Depending on the option you select when you complete your Application and at any later time, and depending upon the type of credit we agree to extend to you, this agreement covers lines of credit that are:

(1) extended on your signature,

(2) secured by personal property that is not your "dwelling", such as an automobile,

(3) secured by shares and / or deposits held by us, and

(4) secured by stock.

Additional Credit Related Services provided as separate accounts and requiring separate agreements may also be offered as follows:

(5) Credit Card accounts,

(6) Electronic Fund Transfers Services

This is an integrated plan consisting of and incorporating (i) your Open-End Credit Application, (ii) this Plan Agreement and Truth-In-Lending Disclosure, (iii) each separate Agreement in this Plan that applies to a credit related service you elect, (iv) our Open-End Credit Plan Agreement Supplement ("Supplement") as amended from time to time,

(v) each Insurance Agreement you enter into for credit life or credit disability insurance offered in conjunction with this Plan and (vi) Electronic

Fund Transfers Agreement, each Advance Request Voucher or Disbursement Voucher and Personal Property Security Agreement you sign, and every other document which you execute or which is provided to you in connection with any extension of credit or any credit related service offered under this Plan. This Plan Agreement is incorporated into each of the foregoing documents, and each document in turn is incorporated into and made part of this Plan Agreement. To the extent that the terms and conditions set forth in any of the foregoing documents differ from the terms and conditions in this Plan Agreement, the terms and conditions set forth in the foregoing documents will control.

PROMISE TO PAY - You promise to repay all money loaned to you under this Plan Agreement plus finance charges and other charges which we may impose. The Supplement discloses the amount of each charge we may impose and, in some cases, how we calculate the charge. The Supplement also discloses any late charges or other fees we may assess.

COST OF CREDIT - You agree to pay a finance charge on all money loaned to you. Except as may otherwise be provided in our separate Credit Card Agreement or the Supplement, the finance charge you pay will be figured as follows: For each day since your last payment (or since your last advance if you have not made a payment), the unpaid balance in your subaccount is multiplied by the daily periodic rate for that subaccount. The sum of those charges is the finance charge you owe. If you have an unpaid balance in more than one subaccount, the finance charge is computed for each subaccount. The balance we use to compute the finance charge is the unpaid balance in your subaccount each day after all payments and credits have been subtracted and all cash advances and other charges added. The initial daily periodic rate and the corresponding Annual Percentage Rate for each subaccount is disclosed in the Supplement. These rates may change if a variable rate applies, or if we elect to change the terms of a subaccount after giving you such advance notice as the law may require.

*(continued on reverse side)*

YOU HAVE READ THE ENTIRE AGREEMENT FOR EACH SERVICE YOU HAVE APPLIED FOR. BY SIGNING BELOW, YOU AGREE TO BE BOUND BY ALL OF THE TERMS OF THIS PLAN AGREEMENT FOR EACH SUCH SERVICE. ALL THE TERMS OF EACH SERVICE YOU HAVE REQUESTED ARE INCORPORATED HEREIN BY REFERENCE.
CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

| BORROWER'S SIGNATURE SYLVIA C HERNANDEZ | DATE | CO-BORROWER'S SIGNATURE | DATE |
|---|---|---|---|
| X *Sylvia Hernandez* | 3-24-08 | X | |
| CO-BORROWER'S SIGNATURE JOSIE HERNANDEZ | DATE | CO-BORROWER'S SIGNATURE | DATE |
| X *Josie F. Hernandez* | 3-24-08 | X | |
| WITNESS (IF APPLICABLE) | DATE | WITNESS (IF APPLICABLE) | DATE |
| X | | X | |

## CREDIT INSURANCE APPLICATION AND DISCLOSURE STATEMENT

### REFER TO FORM #44MOB - Certificate of Insurance
### AND FORM #44HS - Health Statement
for Credit Insurance Application, Disclosure and Certificate of Insurance.

YOU MUST SIGN THE PLAN AGREEMENT ABOVE. IF YOU ELECT CREDIT INSURANCE COVERAGE,
YOU MUST ALSO COMPLETE AND SIGN THE CREDIT INSURANCE APPLICATION AND DISCLOSURE.

© QUEST FINANCIAL SYSTEMS INC.1987,1996,1999 with multiple revisions. All Rights Reserved.   ☒ Credit Union Copy   ☐ Member Copy     FORM NO.OCL-1025-TX-AT (10/99)

## OmniCredit™
### OPEN-END CREDIT PLAN AGREEMENT
### AND TRUTH IN LENDING DISCLOSURE

THE TERMS AND CONDITIONS SET FORTH BELOW, ON THE REVERSE SIDE AND ON THE OPEN-END CREDIT PLAN AGREEMENT SUPPLEMENT ARE PART OF THE ENTIRE CREDIT PLAN. IF YOU AGREE TO USE AND BE BOUND BY THE CLAUSES, TERMS AND CONDITIONS OF THIS PLAN, SIGN THE AGREEMENT ON THE REVERSE SIDE.

**PAYMENTS** - Your minimum monthly payment(s) and payment due date(s) will be shown in the payment schedule of the Supplement and/or on the last Advance Request Voucher or Disbursement Voucher that was prepared for each subaccount you have used. Your payments will be due monthly. Each time a payment changes you will receive a voucher or other notice showing the amount and due date of the new payment. Your minimum payment will never be less than the smaller of the amount shown on the Supplement, or the full amount that you owe. If the amount of your payment or the payment due date shown in your Advance Request Voucher or Disbursement Voucher are different from the provisions of the Supplement or this Plan Agreement, the terms in the Advance Request Voucher or Disbursement Voucher will apply.

The minimum monthly payment is determined by the balance of each of your loan subaccounts following each new advance. Payments do not decline as the balance is reduced. The minimum monthly payment may increase if additional advances are made to you or if the interest rate increases. Your payments will be applied in any order the Credit Union elects. You may pay all or any part of what you owe under any subaccount at any time without penalty for prepayment. Your regularly scheduled payments will still be due, however, unless you and the credit union agree in writing to any change in the payment schedule.

**SINGLE PAYMENT LOAN ADVANCES** - If your loan is a Single Payment Loan Advance, by signing the Advance Request Voucher and/or Disbursement Voucher or the reverse side of the Advance Proceeds Check or by accepting funds we place in any of your credit union accounts or otherwise deliver to you or on your behalf, you agree to make the loan payment for the loan advance which includes the principal amount of the loan advance plus interest and all other costs that you owe from the date of the advance to the date that the payment is made. The payment due date is shown on the Disbursement Voucher.

**SECURITY INTEREST** - You grant us a security interest in any personal property you purchase with the proceeds we loan to you under the Plan Agreement. You also grant us a security interest in any property given as collateral and described in any Advance Request Voucher, Disbursement Voucher, or other instrument evidencing an advance under this Plan. If you give us a security interest in any property, that property will secure all advances under this Plan Agreement, as well as any other loans or obligations you owe us now or at any time in the future including any obligations arising out of any Credit Card Agreements you have with us or any overdraft that may occur with respect to any account you maintain with us. This security interest is given by all Borrowers and Co-Borrowers under this Plan and will secure the obligations of each such Borrower and Co-Borrower. Property given as security will not secure other loans which are otherwise secured by real property which serves as your principal residence. If the property given as security meets the definition of "household goods" under the FTC Credit Practices Rule, that property will not secure other loans or obligations of yours.

Collateral securing other loans with us will also secure all advances made under this Plan Agreement and any other obligations you may have under this Plan.

If we offer you a loan or line of credit that is secured by stock, you grant us a security interest in the stock being pledged to secure that subaccount. You understand and agree that your line of credit is based on a percentage of the market value of the stock as described in the Supplement. You agree that your line of credit will be the percentage of the market value of the stock which is disclosed in the Supplement. If the value of your stock decreases and your subaccount balance exceeds the percentage of the market value of the stock as disclosed in the Supplement, you agree to immediately offer additional security that is acceptable to us or to pay the amount necessary to reduce the outstanding balance to no more than the stated applicable percentage of market value of the pledged stock. If you fail to do so, you will be in default and we may exercise any or all of the remedies provided in this Plan Agreement. The market value of the stock will be the closing price on the business day immediately preceding the date of the loan as published in the Wall Street Journal. This agreement is subject to all applicable rules and regulations of the government agencies and the exchanges upon which the stock is traded. If you are in default under this Plan Agreement, under any subaccount, or under the terms and conditions of any loan or other obligation you have with us at any time, we may declare an event of default under the specific subaccount that is secured by the stock you have pledged and we may, with or without prior notice to you, sell any of your stock and apply the net proceeds to your loan balance after deducting costs of sale.

**GENERAL PLEDGE OF SHARES** - As security for all obligations you may owe under this Plan Agreement, you pledge, assign and give us a security interest and lien in all shares and deposits in any account including transaction accounts with us in which you have an interest now or in the future. You are not giving a security interest in any shares or deposits in an IRA, SEP, Keogh, or any other account which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code. If you are in default under the Plan Agreement, or under any other loan or obligation you have with us, you authorize us to restrict withdrawals from any such account or to apply any or all of your shares or deposits in any such account to amounts that you owe. Further, a statutory lien in favor of the credit union is impressed on the shares and deposits maintained in any account with us in which you have an interest. By signing this Plan Agreement, you acknowledge that such statutory lien is impressed. A pledge, assignment, security interest or lien in shares and deposits, if any, given to secure any credit card account of yours will be governed by the terms and conditions of your Credit Card Agreement with us.

**DEFAULT** - You will be in default (a) if you fail to make a payment on time or in the amount required under this Plan Agreement or any voucher, (b) if you break any promise you have made under this Plan Agreement or any other agreement you have entered into with us, (c) if you file for relief under the Bankruptcy Code or otherwise become insolvent, (d) if you have given false or inaccurate information in connection with any application for credit or other credit related services with us, (e) if you are the subject of any garnishment, attachment, levy or other proceeding, or (f) if anything happens which we reasonably believe impairs your ability to pay what you owe, endangers any collateral you have given to secure any obligation with us, or impairs our recourse as to any such collateral. Except as otherwise provided under applicable law or in any written agreement with us, a default under the terms of any subaccount gives us the right to declare the balance in all of your accounts immediately due and payable. You agree to pay all costs of collection including court costs and reasonable attorney's fees which we may incur in enforcing this Plan Agreement or any other Agreement you have entered into with us. We can delay in enforcing any of our rights under this Plan Agreement any number of times without losing them. You expressly waive presentment, demand, notice of intention to accelerate, and notice of acceleration of the maturity of any amounts under this Plan Agreement.

Interest paid or agreed to be paid shall not exceed the maximum amount permissible under applicable law, and in contingency whatsoever, if we receive anything of value deemed interest under applicable law which would exceed the maximum amount of interest permissible, the excess interest shall be applied to the reduction of the unpaid principal amount, or refunded to you.

**CONTINUED EFFECT** - If any term, condition or provision of this Plan Agreement is determined to be inapplicable, ineffective or unenforceable, that determination shall not affect any other provision that is or may be incorporated into this Agreement. All other terms, conditions and provisions will continue in force until this Plan Agreement is terminated and all subaccount balances have been paid in full.

**CHANGING OR CANCELLING THE AGREEMENT** - We have the right to cancel this Plan Agreement or any Plan subaccount or change the terms of the Plan, this Plan Agreement, or one or more subaccounts, including the periodic rate that applies, at any time. You may cancel this Plan Agreement at any time by notifying us in writing. Your obligation to pay us what you owe continues if either of us cancels the Agreement.

**DEFINITIONS**

**ANNUAL PERCENTAGE RATE** - The cost of borrowing money expressed as a yearly rate.

**FINANCE CHARGE** - The cost in dollars and cents of borrowing money.

**PERIODIC RATE** - The Annual Percentage Rate divided by the number of periods in a year.

**SECURITY INTEREST** - Your transfer, assignment or pledge to us of your interest in property to secure repayment of any credit advance or line of credit we offer you.

**SECURITY AGREEMENT** - A written document or statement in which you give us a security interest in property of yours, described in the security agreement, to secure repayment of your obligations owing to us.

The provisions set forth on the enclosed Open-End Credit Plan Agreement Supplement ("Supplement") and all other agreements contained in this document are part of the entire Plan. Please read all sections. If you agree to be bound by all the promises and terms of this Plan, sign on the reverse side of this Plan Agreement.

© QUEST FINANCIAL SYSTEMS INC.1987,1998,1999 with multiple revisions. All Rights Reserved.

page 4 [00070000K5HU2U9A]

# EXHIBIT "2"

page 335 [00070000JZ27H26L]

**OmniCredit**
DISBURSEMENT VOUCHER AND
PERSONAL PROPERTY SECURITY AGREEMENT

ABILENE TEACHERS FEDERAL CREDIT UNION
P.O. BOX 5706, ABILENE, TEXAS 79608
MAIN OFFICE
2801 NORTH 6TH ST., (325) 677-2274, FAX: (325) 676-0515
BRANCH OFFICE:
2555 BUFFALO GAP RD., (325) 692-7265, FAX: (325) 695-6847

| BORROWER'S NAME | CO-BORROWER'S NAME |
|---|---|
| SYLVIA C HERNANDEZ | JOSIE HERNANDEZ |
| 1261 W EDEN ST | 7117 COUNTY ROAD 4235 |
| MUNDAY, TX 76371-2021 | MUNDAY, TX 76371-4175 |

| PURPOSE | DATE | SOCIAL SECURITY NO. | MEMBER NUMBER | LOAN NUMBER |
|---|---|---|---|---|
| Purchase Used Vehicle | 3-24-2008 | | | |

| TRANSACTION TYPE | ☒ FIRST ADVANCE | ☐ SUBSEQUENT ADVANCE | ☐ SINGLE PAYMENT LOAN (See Reverse Side) | ☐ OTHER (Describe) | | Source C | Officer 118 |

| FOR CREDIT UNION USE ONLY MEMBER PAYS PREMIUM FOR THE FOLLOWING COVERAGES: | ☐ CREDIT DISABILITY | ☒ SINGLE CREDIT LIFE | ☐ JOINT CREDIT LIFE |

## YOUR PAYMENT TERMS

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | INTEREST RATE IS | | OTHER CHARGES (Describe) | | LOAN LIMIT |
|---|---|---|---|---|---|---|
| 0.016438 % | 6.000 % | FIXED ☒ | VARIABLE ☐ | | | |

| AMOUNT REQUESTED | + | OTHER CHARGES | = | AMOUNT ADVANCED | + | PREVIOUS BALANCE | = | NEW BALANCE |
|---|---|---|---|---|---|---|---|---|
| $18,438.67 | | | | $18,438.67 | | | | $18,438.67 |

| PAYMENT AFTER ADVANCE | FIRST PAYMENT DUE DATE | PAYMENT FREQUENCY | REMAINING LIMIT |
|---|---|---|---|
| $364.00 | 4-25-2008 | Monthly | |

## YOU OFFER THE FOLLOWING PROPERTY AS SECURITY

The advance is secured by your shares and deposits and the following property. Collateral securing other loans with us may also secure this loan.

| PROPERTY | | | | I.D. NUMBER |
|---|---|---|---|---|
| CHEV | TRAILBALZE | 2006 | | 1GNET16S266105938 |

YOU PLEDGE SHARES AND/OR DEPOSITS OF:   Acct. #   Acct. #

| REFER TO OPEN-END CREDIT PLAN AGREEMENT | PURCHASE MONEY ☐ YES ☐ NO | KEY NO. | LOCATION OF PROPERTY |
|---|---|---|---|

## FOR CREDIT UNION USE ONLY (PROPERTY INSURANCE VERIFICATION)

| INSURANCE COMPANY NAME | ADDRESS / CITY / STATE / ZIP | AGENT NAME | AGENT PHONE NUMBER |
|---|---|---|---|
| GLEN HERRING | HASKELL TX | PROGRESSIVE | 940-422-4359 |

## SIGNATURE(S)

By your signature(s), you request that an advance be made under your Open-End Credit Plan Agreement in the amount set forth in the Amount Advanced section above. You acknowledge that you have previously received, read, and that you agree to be bound by the terms and conditions set forth in your Open-End Credit Plan Agreement and the Truth in Lending Disclosures which accompany that Agreement. By endorsing any advance proceeds check, by utilizing any other service you request under this voucher, or by accepting funds we deposit or disburse at your request, you acknowledge receipt of this advance and agree to repay the advance and existing balance under the terms set forth above.
You promise that the information provided in this Disbursement Voucher and Personal Property Security Agreement is true and correct and you authorize us to check your employment and credit history and to obtain credit reports in connection with this or any advance. If you request, we will tell you the name and address of any credit bureau from which we received a credit report on you.

If you are giving a security interest in any property in connection with this Disbursement Voucher and Personal Property Security Agreement, by your signature(s) you acknowledge and agree to be bound by the terms and conditions of the Personal Property Security Agreement which appears on the reverse side. Subject to the provisions appearing on the reverse side, the collateral described above secures all of your obligations owing to us now or in the future. Collateral securing other loans with us will also secure the Amount Advanced set forth above and the entire New Balance set forth above.
If you are not a Borrower under this Disbursement Voucher, but you are giving a security interest in collateral to secure repayment of amounts set forth above, sign below and check the box for "Owner of Collateral". By doing so, you agree only to the terms of the Personal Property Security Agreement on the reverse side.

| BORROWER'S SIGNATURE SYLVIA C HERNANDEZ | DATE | CO-BORROWER'S SIGNATURE | ☐ OWNER OF COLLATERAL | DATE |
|---|---|---|---|---|
| X *Sylvia Hernandez* | 3-24-08 | X | | |
| CO-BORROWER'S SIGNATURE JOSIE HERNANDEZ | DATE | CO-BORROWER'S SIGNATURE | ☐ OWNER OF COLLATERAL | DATE |
| X *Josie F. Hernandez* | 3-24-08 | X | | |
| WITNESS (IF APPLICABLE) | DATE | WITNESS (IF APPLICABLE) | | DATE |
| X | | X | | |

☐ Credit Union Copy   ☐ Hold Copy   ☐ Member Copy

© QUEST FINANCIAL SYSTEMS INC. 1087, 1628  9032 w/fr,nfg,sle tevor's  All Rights Reserved

FORM NO. OCL-1150-2-TX-KT (1099)

PLEASE SEE REVERSE SIDE FOR PERSONAL PROPERTY SECURITY AGREEMENT

page 5 [00070000K5HU2UCB]

page 336 [00070000JZ27H2A2]

## PERSONAL PROPERTY SECURITY AGREEMENT

**DEFINITIONS:** In this Security Agreement (the "Security Agreement) "you" and "your" mean each person who signs on the reverse side and each person who owns the property offered as security on the reverse side. "We", "us", "our", and "Credit Union" mean the credit union named on the reverse side and anyone to whom the Credit Union transfers its rights under the terms and conditions of this Agreement. Terms not defined herein have the meaning given those terms in the "Open-End Credit Plan Agreement".

**SINGLE PAYMENT LOAN ADVANCES:** If your loan is a Single Payment Loan Advance, by signing the Advance Request Voucher and/or Disbursement Voucher or the reverse side of the Advance Proceeds Check or by accepting funds we place in any of your credit union accounts or otherwise deliver to you or on your behalf, you agree to make the loan payment for the loan amount which includes the principal amount of the loan advance plus interest and all other costs that you owe from the date of the advance to the date that the payment is made. The payment due date is shown on the Disbursement Voucher.

**SECURITY INTEREST:** By signing on the reverse side, or on any other check, draft or instrument which refers to or incorporates this Security Agreement by reference, you give us a security interest in the property described on the reverse side (the "Property" or "Security"). You are also giving us a security interest in the proceeds of the property if the property is sold, in any insurance equipment you add to the property ("Accessions"), and any insurance proceeds or insurance premium refunds. The property given as security secures repayment of the Advance and the New Balance described on the reverse side, any renewal, refinancing or extension thereof, and any advances which we may make in order to pay taxes, insurance premiums, fees, costs of collection, or other charges for which you are liable under the Disbursement Voucher, this Personal Property Security Agreement, and the Open-End Credit Plan. This Security Interest also secures any other loans or obligations you owe us now or at anytime in the future including any obligations arising out of any Credit Card Agreements you have with us or any overdrafts that may occur with respect to any account you maintain with us. This Security Interest is given by all parties signing on the reverse side, and will secure the obligations of each such party owing to us. Property given as security will not secure other loans which are otherwise secured by real property which serves as your principal residence. If the secured by real property which serves as your principal residence. If the property given as security meets the definition of "household goods" under the Federal Trade Commission Credit Practices Rule, that property will not secure other loans or obligations of yours.

Collateral securing other loans with us may also secure the Advance and the New Balance described on the reverse side, and any other obligations you may have under this Disbursement Voucher and Personal Property Security Agreement.

Subject to the terms of each loan or other obligation, default under the terms of any loan or obligation you have with us constitutes a default under all loans and obligations which you have with us.

**OWNERSHIP OF SECURED PROPERTY:** You promise that you own the Security and that there are no liens or any other claims against the Security other than the credit union's. You agree not to sell or lease the Security or pledge it as security, to anyone else, until the loan has been paid in full.

**PROTECTION OF PROPERTY:** You promise you will (a) keep the property in good condition and in good repair; (b) obtain written permission from the Credit Union before making major alterations to the property; (c) perform all acts which the Credit Union deems necessary to make its security interest enforceable; (d) not use or allow the property to be used for any unlawful purposes; (e) allow the credit union to inspect the property at reasonable times; (f) pay all costs of protecting the property, including reasonable attorney's fees; (g) promptly notify the Credit Union if the property is being changed, stolen, or abused; and (h) inform the Credit Union, in writing, before changing your address or the address where the property is kept. You also agree that you will not move the property outside of the state in which you reside without the Credit Union's prior written approval.

**PROPERTY INSURANCE, TAXES AND FEES:** You promise to pay all taxes and fees (like registration fees) due on the property and to keep the property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to the Credit Union. You may provide the property insurance through a policy you already have, or through a policy you get and pay for from an agent you choose. It must specifically name the Credit Union as loss holder and loss payee. You promise to make the insurance policy payable to the Credit Union and to deliver the policy or proof of coverage to the Credit Union. You agree to deliver a copy of a current insurance policy that meets these requirements to us immediately after you receive any secured advance, and at any time thereafter at our request. If you fail to insure or to pay all taxes and fees when due, we will pay them when due, we may pay these obligations, but we have no obligation to do so. If we pay any such taxes or fees, or if we pay the premium for any policy of insurance covering the property, the taxes, fees and premiums will be added to the balance of this subaccount, and you agree to pay interest on those amounts at the annual percentage rate appearing on the reverse side. We may require you to pay any amounts we have expended for taxes, fees or insurance premiums immediately, or we may increase your payments in amounts sufficient to pay the amounts added to your subaccount within the term of any insurance policy purchased, or in approximately the same number of months originally scheduled. If we pay for taxes, fees or insurance premiums and add these costs to the balance of your subaccount, we may also consider you in default under this Agreement as a result of your failure to pay these amounts. In that event, we may enforce any or all of our rights under this Security Agreement or your Open-End Credit Plan Agreement. It is important for you to realize that, if you fail to insure the property and we obtain insurance, the insurance we obtain is primarily for our protection and will not insure you against bodily injury or property damage claims. You agree that any money we spend for taxes, fees or insurance premiums will be secured

by the property. You agree that, if you cancel your insurance and obtain a refund, we have a right to the refund. You agree that we may use any insurance settlement to repair the property or to apply it toward what you owe in our sole discretion. You authorize us to endorse any insurance draft or check which may be payable to you in order to collect any refund or benefits due under any insurance policy which you purchased. Under no circumstances will we be responsible for insuring the property, even though we may have previously purchased insurance to protect our interest in the property.

**General Pledge of Shares:** As security for all obligations you may owe under the Plan Agreement, you pledge, assign and give us a security interest and lien in all shares and deposits in any account, including transaction accounts with us in which you have interest now or in the future. You are not giving a security interest in any shares or deposits in an IRA, SEP or Keogh, or any other account which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code. If you default under the Plan Agreement, or under any other loan or obligation you have with us, you authorize us to restrict withdrawals from any such account or to apply any or all of your shares or deposits in any such account to amounts that you owe. Further, a statutory lien in favor of the credit union is impressed on the shares and deposits maintained in any account with us in which you have an interest. By signing the Plan Agreement and on the reverse side, you acknowledge that such statutory lien is impressed. A pledge, assignment, security interest or lien in shares and deposits, if any, given to secure any credit card account of yours will be governed by the terms and conditions of your Credit Card Agreement with us.

**POWER OF ATTORNEY:** You appoint the Credit Union as your attorney in fact to perform any acts necessary to maintain the property, to collect refunds or benefits due under any insurance policy on the property, or to transfer title on any property that is titled.

**DEFAULT:** You will be in default (a) if you fail to make a payment on time or in the amount required under the Open-End Credit Plan Agreement or any voucher; (b) if you break any promise you have made under the Open-End Credit Plan Agreement, this Security Agreement, or any other agreement you have entered into with us; (c) if you file for relief under the Bankruptcy Code or otherwise become insolvent; (d) if you have given false or inaccurate information in connection with any application for or subject of any garnishment, attachment, services with us, (e) if you are the subject of any garnishment, attachment, levy or other proceeding, or (f) if anything happens which we reasonably believe impairs your ability to pay what you owe, endangers the Property, or impairs our recourse to the Property. Except as otherwise provided where applicable law or in any written agreement with us, a default under the terms of any subaccount gives us the right to declare the balance in all of your accounts immediately due and payable. You agree to pay all costs of protecting, retaking, repairing and/or selling the Property as well as all costs of collection including court costs and reasonable attorney's fees which we may incur in enforcing the Open-End Credit Plan Agreement or this Security Agreement. We can delay in enforcing any of our rights under the Plan Agreement and this Security Agreement at any number of times without losing them. If you are in default, you agree to assemble all of the collateral securing your loans and make it available to us at a place we designate. When you are in default, and after the expiration of any right you may have under applicable state law to cure your default, we can require immediate payment of all amounts you owe and take possession of the Property. If we obtain possession of the Property, we may take any action with respect to the Property to which we are entitled under applicable law. We can sell the Property, and apply the money received to amounts you owe us. You expressly waive presentment, demand, notice of intent to accelerate, and notice of acceleration of the maturity of any amounts secured by the Property. Any notices we send to you will be effective when we mail them to you at the address shown on our records. We do not have to send notices by certified or registered mail unless we are otherwise required to do so by law.

**DELAY IN ENFORCEMENT:** We can delay enforcing any of our rights under this Agreement at any time without losing them. You are required to perform strictly under the terms of this Agreement.

**GOVERNING LAW:** You understand and agree that this Agreement is made in the state where our address appears on our statements and to you and shall be governed by the laws of that state to the extent that such laws are not inconsistent with controlling federal laws. You also understand that the choice of law rules of our state will not be applied if that would result in the application of the law of another state.

**LIABILITY OF PARTIES:** Each person who signs this Security Agreement agrees to be individually and jointly obligated under the terms and conditions of this Security Agreement.

**FEDERAL DISCLOSURE STATEMENT:** The terms and conditions of the Open-End Credit Plan Agreement Supplement are incorporated herein by reference.

**PRESERVATION OF AGREEMENT PROVISIONS:** If any term, condition or provision of this Agreement is determined to be unenforceable only that provision shall be considered to be deleted from this Agreement, and all other terms, conditions and provisions will continue in force until the subaccount balance is paid in full.

**COPY RECEIVED:** You acknowledge receipt of the Open-End Credit Plan Agreement that is referenced on the reverse side, including the Open-End Credit Plan Agreement Supplement and this Personal Property Security Agreement, and agree to all the terms of each of them.

**IMPORTANT:** THE PROPERTY DESCRIPTION ON THE REVERSE SIDE IS PART OF THIS AGREEMENT. Sign this agreement on the reverse side.

### COLLATERAL INSURANCE NOTICE

**PLEASE PROVIDE EVIDENCE OF INSURANCE IMMEDIATELY- INSURANCE REQUIREMENTS FOR SECURED ADVANCES**

This notice is to remind you that one of the requirements of any secured loan advance is that you carry a policy of insurance, as described in your Personal Property Security Agreement, to protect us from financial loss from any damage to the property you pledge. This insurance must remain in effect as long as the Credit Union retains a security interest in the property. Please review the "Property Insurance" provisions of your Personal Property Security Agreement carefully. If you do not purchase the required "Property Insurance", the insurance the credit union may purchase and charge you for will cover only the credit union's interest in the property. The insurance will not be liability insurance.

© GUEST FINANCIAL SYSTEMS INC. 1987,1998,1998 with multiple revisions. All Rights Reserved.                                                FORM NO. OCL-11502-TX-AT (1099)

page 6 [00070000K5HU2UE1]

# EXHIBIT "3"

Title 7 [00070000JZSKS06H]

Upon sale of this vehicle, the purchaser must apply for a new title within 20 working days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK FOR ADDITIONAL INFORMATION.

0
2
4
9
7
3

ABILENE TEACHERS FCU
PO BOX 5706
ABILENE, TX 79608-5706

↓ DETACH HERE ↓

## TEXAS CERTIFICATE OF TITLE

VEHICLE TITLES AND REGISTRATION DIVISION

84898659

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1GNET16S266105938 | 2006 | CHEV | LL |

TITLE/DOCUMENT NUMBER | DATE TITLE ISSUED
22130039540105156 04/15/2008

| MODEL | LIFE CAPACITY IN TONS | WEIGHT | LICENSE NUMBER | |
|---|---|---|---|---|
| TRL | | 5000 | HMZ128 | |

ODOMETER READING
64896

PREVIOUS OWNER
STAR DODGE ABILENE TX

REMARKS:
ACTUAL MILEAGE

OWNER
SYLVIA HERNANDEZ
JOSIE HERNANDEZ
7117 CR 4235
MUNDAY, TX 76371

X ..........
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN | 1ST LIENHOLDER
03/21/2008 ABILENE TEACHERS FCU
PO BOX 5706
ABILENE, TX 79608-5706

1ST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN | 2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN | 3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS

RIGHTS OF SURVIVORSHIP AGREEMENT
WE THE PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S)

SIGNATURE _____ DATE

SIGNATURE _____ DATE

SIGNATURE _____ DATE

FORM 30-C REV '3700' | DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.